UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| DAWN ELLEN SHRUM, | ) | CASE NO. 17-06895 |
| | ) | |
| DEBTOR. | ) | JUDGE HARRISON |
| | ) | |

**DEBTOR'S MEMORANDUM OF LAW AND FACT IN SUPPORT OF
CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION**

Comes now Dawn Ellen Shrum (the "Debtor"), by and through counsel, and files this Memorandum of Law and Fact in Support of confirmation of the Debtor's Amended Plan of Reorganization.

**SUMMARY OF ARGUMENT**

1. The plain language of 11 U.S.C. § 1122 and the Sixth Circuit precedent are clear, in order for a deed of trust to be unmodifiable it must be: (i) secured on only real property and (ii) that real property is the debtor's principal residence. The deed of trust in this case provides the current lender, Bank of New York Mellon FKA the Bank Of New York, As Trustee for the Certificate holders of the CWALT, Inc., Alternative Loan Trust 2006-OC10, Mortgage Pass-Through Certificates, Series 2006-OC10 ("BONY") with a security interest in two items of personal property: (i) escrow funds and (ii) proceeds of any cause of action for misrepresentation of the property's value or condition. As a result of obtaining this additional security that is not real property, the deed of trust forfeits the protections of the anti-modification clause and can be modified in the Debtor's Amended Plan of Reorganization.

1

## JURISDICTION

2. The Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 157(a) and 1334.

3. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

4. This proceeding is a core proceeding under 28 U.S.C. § 157(b).

5. The Debtor consents to the Bankruptcy Court entering a final order adjudicating the Application pursuant to *Wellness Int'l Network Ltd. v. Sharif,* 135 S. Ct. 1932 (2015).

## BACKGROUND

6. On October 11, 2017, the Debtor commenced this case by filing a voluntary petition for relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101 to 1532 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court").

7. On May 18, 2018 (the "Conversion Date"), the Debtor's case was converted from a case under chapter 13 of the Bankruptcy Code to a case under chapter 11 of the Bankruptcy Code.

8. On July 6, 2018, the Debtor filed her Plan. [Dkt Entry No. 96].

9. On July 11, 2018, the Bankruptcy Court entered the Order Approving Amended Disclosure Statement in Support of Debtor's Amended Plan of Reorganization and Setting Hearing on Confirmation of Debtor's Amended Plan of Reorganization (the "Confirmation Hearing Order"). [Dkt Entry No. 100]. The Confirmation Hearing Order set September 4, 2018, as the date for the hearing on confirmation of the Plan (the "Confirmation Hearing").

10. On August 13, 2018, BONY filed an objection to the Plan (the Objection"). [Dkt Entry No. 105].

11. The Bankruptcy Court entered an Agreed Order Setting (I) Briefing Schedule and (II) Hearing on Debtor's Amended Plan of Reorganization. [Dkt Entry No. 117].

## OVERVIEW OF DEED OF TRUST

12. The language of the deed of trust at issue is imperative for the Bankruptcy Court to evaluate the relevant legal issues. On July 20, 2006, the Debtor and her non-Debtor husband Barry Shrum, entered into a deed of trust in favor of AmSouth Bank (the "Deed of Trust") secured on 400 Whistler Cove, Franklin, Tennessee 37067 (the "Property"). The Deed of Trust was assigned to BONY on February 21, 2012. A true and accurate copy of the Deed of Trust, as filed in BONY's proof of claim no. 11, is attached as **Exhibit A**.

13. There are two clauses at issue in the Deed of trust and both located in the Uniform Covenants section. The first concerns the escrow account and compliance with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. The Deed of Trust includes various covenants, one of which states, "[i]f there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA." *Deed of Trust*, at 5.

14. The second concerns the assignment of certain proceeds. The Deed of Trust contains a covenant titled "Assignment of Miscellaneous Proceeds; Forfeiture," which states that all such proceeds "are hereby assigned to and shall be paid to Lender." *Id.* at 9, ¶ 11. The Deed of Trust defines "Miscellaneous Proceeds" in paragraph (L) as:

> any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

3

Case 3:17-bk-06895    Doc 120    Filed 10/29/18    Entered 10/29/18 14:34:45    Desc Main
Document    Page 3 of 10

*Id.* at 2. The covenant regarding Miscellaneous Proceeds requires BONY to use them for restoration or repair of the property if economically feasible and if its security "is not lessened." *Id.* at 9, ¶ 11. If restoration/repair is infeasible or the lender's security is lessened, Miscellaneous Proceeds are to be "applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to" the Debtor. *Id*. at 4. If there are additional Miscellaneous Proceeds after restoration or repair and BONY is satisfied regarding the condition of the property, the Miscellaneous Proceeds are to be paid to the Debtor. *Id*. at 9 ¶ 11. If restoration or repair is economically infeasible, BONY is to apply the Miscellaneous Proceeds to the outstanding debt. *Id*. In the event of a total taking, destruction, or loss of value, BONY is to apply the Miscellaneous Proceeds to the outstanding debt and any excess is to be paid to Debtor. *Id*. If there is a partial taking and the fair market value equals or exceeds the amount secured, "the sums secured ... shall be reduced" according to a formula stated in the document. *Id.* If there is a partial taking and the fair market value is less than the amount secured, the lender must apply Miscellaneous Proceeds to the sums secured, whether or not they are due. *Id.*

## ARGUMENT

A.  *The Anti-Modification Clauses and the Sixth Circuit*

15. In order to employ the anti-modification clauses[1] found in the Bankruptcy Code, the plain language of the statutes requires that the lender be secured only by an interest in real property constituting the debtor's principal residence. "The starting point in any case involving the meaning of a statute is the language of the statute itself." *Reinhardt v. Vanderbilt Mort. & Fin.*

---

[1] Section 1322(b)(2) provides the exact same treatment in the context of chapter 13 plans as 11 U.S.C. § 1122(b)(5) provides in the context of chapter 11 cases. Due to the prevalence of chapter 13 cases compared to chapter 11 cases, most of the case law evaluates this provision. These cases are equally as applicable to interpreting the anti-modification clause in chapter 11. Rather than having to pinpoint which chapter a relevant case was pending under, this Memorandum will simply use "anti-modification clause" regardless of the chapter.

*Inc. (In re Reinhardt)*, 563 F.3d 558, 562 (6th Cir. 2009). Section 1122(b)(5) provides that a chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured **only** by a security interest in real property that is the debtor's principal residence...." (emphasis added). Thus, if the secured party has a security interest in anything other than the real property, which constitutes the debtor's principal residence, the security interest is subject to modification in a chapter 11 plan.

16. In the Sixth Circuit's most recent evaluation of the anti-modification clause, it distilled the test as two requirements "that the property [subject to security interest] be real property and that it be the debtor's principal residence." *Reinhardt*, 563 F.3d at 562. The *Reinhardt* Court found no need to resort to legislative history or perceived intent when the statute is this plain and unambiguous. *Id.* at 562-63. This analysis follows the guidance of the Supreme Court. *E.g. Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."). Applying this rule, if any of the property secured is personal property under state law it is not subject to the anti-modification clause. Notably, the Sixth Circuit rejected the argument that the expansion of the definition of principal residence as part of BAPCPA was sufficient indication of congressional intent to protect personal property contained in the definition of "principal residence" when the language of the statute plainly requires that the security interest only cover real property. In sum, because the anti-modification clause in unambiguous, no resort to legislative history or perceived congressional intent is appropriate, let alone necessary.

17. In the earlier case of *Allied Credit Corp. v. Davis (In re Davis)*, the Sixth Circuit Court analyzed whether a requirement of hazard insurance or an assignment of rents constituted

5

additional security sufficient to eliminate the protection of the anti-modification clauses. There, the court found hazard insurance is an essential element of replacing underlying real property and, as a result, it was not additional collateral. *See id.* at 211-12. It also found rents were not additional collateral because they were "inextricably bound to the real property itself as party of the bundle of possessory rights." *Id*. at 213.

18. Conforming *Reinhardt* and *Davis* creates a two part test. First, under *Reinhardt,* the question is simple: is the property subject to the security interest real property under state law? If not, then it constitutes additional security unless it fits within the confines of the exceptions outlined in *Davis*: does the property function as replacement of the underlying collateral or is it bound up in the bundle of possessory rights? If neither of these exceptions apply, then the security constitutes additional collateral and the anti-modification clause does not apply.

   B.   *Applying the Sixth Circuit Analysis to Escrow Funds*

19. The assignment to BONY of the Debtor's interest in the escrow account constitutes additional security under Sixth Circuit case law. More specifically, escrow funds are not real property under *Reinhardt*, and they do fit within the exceptions outlined in *Davis*, and they can be applied to the underlying debt. Accordingly, the escrow funds constitute additional security that eliminate the protections of the anti-modification clause.

20. Escrow funds are not real property under Tennessee law. Tennessee Code Annotated 67-5-501 defines real property as: "lands, tenements, hereditaments, structures, improvements, movable property assessable under § 67-5-802, or machinery and equipment affixed to realty, except as otherwise provided for in this section, and all rights thereto and interests therein, equitable as well as legal." Escrow funds are simply not real property under Tennessee law. Courts in other states have concluded similarly. *See Stevens v. SunTrust Bank (In re Stevens),*

6

Case 3:17-bk-06895    Doc 120    Filed 10/29/18    Entered 10/29/18 14:34:45    Desc Main
Document      Page 6 of 10

581 B.R. 534, 542-45 (Bankr. N.D. Ohio 2015) (Ohio law); *In re Thomas*, 344 B.R. 386, 392 (Bankr. W.D. Pa. 2006) (Pennsylvania law). The holding in *Thomas* is particularly persuasive given the deed of trust in that case has almost exactly the same provisions as the Deed of Trust in this case.

21. Escrow funds are not replacement collateral or bound to the real property as part of the possessory rights. Escrow funds do not relate to the diminishment or replacement of the collateral and do not serve as replacement security. *Stevens*, 581 B.R. at 541. Indeed, "escrow funds are more akin to a certificate of deposit or automobile pledged as additional security irrespective of the value of the real property." *Id.* All of which clearly constitute additional collateral. Moreover, escrow funds are not benefits derived from the real property like rents or royalties that bound up in the possessory rights associated with the real property. *Id.*

22. Because certain situations exist when BONY may apply the escrow funds to the loan balance, they constitutes additional collateral securing BONY's interests. The Deed of Trust specifically states that: "Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply Funds at the time specified under RESPA ..." Under Regulation X enacted with respect to RESPA, the mortgagee shall refund any surplus in the escrow account over fifty dollars and may refund or apply to the next year's escrow account any surplus under fifty dollars if the mortgagor is current. 24 C.F.R. § 3500.17(f)(2)(i). However, if the mortgage servicer does not receive payment within 30 days of the payment due date, the servicer may retain the surplus in the escrow account in accordance with the mortgage loan documents. 24 C.F.R. § 3500.17(f)(2)(ii). Meanwhile, the Deed of Trust states that BONY shall refund any excess funds to the Debtor upon full payment of the loan. *Deed of Trust*, ¶ 3. The Deed of Trust also allows BONY to hold the funds in an amount sufficient to apply the funds in the manner specified in the

Deed of Trust. Paragraph 2 of the covenants in the Deed of Trust governs the application of these payments. It provides that BONY shall apply all payments first to interest due under the promissory note, then to principal due under the promissory note, and then to amounts due for escrow items. In the event that the Debtor has more than one payment outstanding, BONY may apply any payment received from Debtor to the "Periodic Payment" until it is paid in full. *Id.* at 3–4, ¶ 2. The document defines "Periodic Payment" in Section N of the Definitions as "the regularly scheduled amount due for (I) principal and interest under the Note, plus (II) any amounts due under Section 3 [Escrow Items] of this Security Instrument." *Id.* at 2.

23. In sum, BONY's interest in escrow funds is additional security and eliminates the protections of the anti-modification clause.

C. *Application of the Sixth Circuit Analysis to Misrepresentation Proceeds and Damages*

24. Just like the escrow funds, the assignment of the proceeds or damages from misrepresentations regarding the Property's value or condition are additional collateral that eliminates the protections of the anti-modification clause.

25. Proceeds or damages for misrepresentation of the real property's value or condition are not real property under Tennessee law. *See* T.C.A. § 67-5-802. The court in *In re Thomas* came to the same conclusion regarding a deed of trust substantially identical to the Deed of Trust, 344 B.R. 386, 392 (Bankr. W.D. Pa. 2006) (Pennsylvania law).

26. Although proceeds or damages for misrepresentation of the Property's value or condition would appear to simply constitute replacement security, that is not the case as proceeds or damages could be in excess of the value of the Property. Indeed, punitive damages for fraud or treble damages for violation of the Tennessee Consumer Protection Act T.C.A. § 47–18–109(a)(3), both of which are available as remedies for misrepresentations, could easily be more than the value

8

of the underlying property. The terms of the Deed of Trust do not cap the proceeds or damages at the value of the Property. Thus, the damages or proceeds could provide more security than simply replacing the Property.

27. Proceeds or damages for misrepresentation of the Property's value or condition are not bound up in the possessory rights associated with the Property. They are not an incidental benefit like the rents in *Davis*, which accrue from possession of the Property. Rather they are additional protection for BONY that can exceed the value of the Property. In other words, they are additional collateral.

## **CONCLUSION**

28. The interest granted to BONY in the escrow funds and proceeds or damages from misrepresentations regarding the Property's condition or value takes the Deed of Trust outside the protections of 11 U.S.C. § 1122(b)(5). BONY has ignored the warning of the Third Circuit: "[I]f the lender does not want its claim to fall outside of the protection of § 1322(b)(2), it should not seek to get every last piece of collateral." *In re Ferandos*, 402 F.3d 147, 152 (3d Cir. 2005). Now it is stuck with the consequence, the Deed of Trust is subject to modification in the Plan.

Respectfully submitted,

MANIER & HEROD, P.C.

/s/ Robert W. Miller
Michael E. Collins (BPR No. 16036)
Robert W. Miller (BPR No. 31918)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Tel: (615) 244-0030
Fax: (615) 242-4203
mcollins@manierherod.com
rmiller@manierherod.com

Counsel for the Debtor

9

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via the Court's ECF system on October 29, 2018, on all parties registered to receive electronic service.

/s/Robert W. Miller
Robert W. Miller